Vincent S. FRANZ, Petitioner,

v.

INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado, Brookharts, Inc., and Pinnacol Assurance, Respondents.

No. 09CA1433.

Colorado Court of Appeals, Div. III.

May 13, 2010.

Steven U. Mullens, P.C., Steven U. Mullens, Pattie J. Ragland, Colorado Springs, Colorado, for Petitioner.

John W. Suthers, Attorney General, A.A. Lee Hegner, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office.

Harvey D. Flewelling, Denver, Colorado, for Respondents Brookharts, Inc. and Pinnacol Assurance.

Opinion by Judge RICHMAN.

In this workers' compensation action, claimant, Vincent S. Franz, seeks review of the final order of the Industrial Claim Appeals Office (Panel) which affirmed the order of the administrative law judge (ALJ) denying his request for attorney fees. Claimant's request for fees was based on his assertion that employer, Brookharts, Inc., and its insurer, Pinnacol Assurance (collectively employer), had improperly requested a hearing on an issue that was not yet ripe, thus entitling him to an award of attorney fees under section 8–43–211(2)(d), C.R.S. 2009.

Because we conclude that the Panel's decision that the issue was ripe for hearing is supported by the record, we affirm its determination that claimant was not entitled to attorney fees.

## I. Background

Claimant sustained a compensable injury in 1989. He was subsequently found to be permanently and totally disabled, and he received care from an authorized treating physician (ATP). In 2007, suspecting that the ATP was overmedicating claimant, employer requested a medical utilization review (MUR) to determine if the ATP should continue treating claimant. The MUR committee unanimously agreed that the ATP should be removed, and by order entered February 15, 2008, the Director of the Division of Workers' Compensation (Director) adopted the committee's recommendation.

On May 9, 2008, claimant requested ALJ review of the Director's change of ATP order. The ALJ eventually upheld the Director by order entered September 2, 2008. The Panel's final order upholding the ALJ's decision has been affirmed contemporaneously with this opinion. *Franz v. Indus. Claim Appeals Office*, 250 P.3d 755 (Colo.App. 2010).

Within seven days of the Director's decision and before claimant's appeal to the ALJ was filed, employer took steps to select a new ATP for claimant, as required by section 8–43–501(4), C.R.S. 2009. Because claimant declined employer's invitation to participate in the selection process and the parties could not reach agreement on a new ATP within the statutory seven-day period, the task of selecting three potential providers then fell to the Division of Workers' Compensation. *See* § 8–43–501(4). By letter dated May 21, 2008, the Division notified the parties that it was able to find only one physician willing to assume claimant's care as the ATP. On May 29, 2008, employer agreed to the proposed replacement ATP and scheduled an appointment for claimant.

However, in a letter sent in June 2008 (misdated as 2007), before the scheduled appointment, the replacement ATP withdrew her agreement to treat claimant because claimant "did not have his paperwork completed" and had informed her office that "he did not wish to switch physicians, since he 'finally found one who helped [him].'" Thus, despite the statutory mandate that a replacement ATP be designated, none was. *See* § 8–43–501(4).

In July 2008, employer requested further assistance from the Division in contacting

three additional potential ATPs. The Division declined to do so. It noted that its involvement in the MUR process ceased with the selection of the replacement ATP, stating that issues such as whether the claimant is refusing to submit to an examination or whether the doctor is refusing to treat due to nonmedical reasons are outside the MUR process and suggesting that such issues "may be best addressed by an administrative law judge." Despite requests for reconsideration by both employer and claimant, the Director maintained his position that he could take no further action.

On August 29, 2008, employer filed an application for hearing, identifying on the preprinted form that "authorized provider" was an issue to be heard, as well as stating that because the replacement ATP had refused to treat claimant, "[t]his application is filed so that when all appeals are exhausted and if the MUR is affirmed, a new ATP will be ready to resume care. [Employer is] seeking [an] order from ALJ regarding new ATP."

On September 9, 2008, claimant filed an objection to the application for hearing on the ground that employer violated section 8–43–211(2)(d) by endorsing an issue not yet ripe for review; he also requested his attorney fees. He argued that because the appeal of the Director's decision ordering a change of ATP was still pending, it was premature for employer to seek an order from the ALJ appointing a new ATP. In November 2008, claimant served answers to interrogatories stating that he did not refuse treatment from the replacement ATP and suggesting that employer's insurer was failing to provide medical treatment.

A hearing was held on January 14, 2009, at which time the parties presented arguments on employer's request that a replacement ATP be selected and claimant's request for attorney fees against employer for endorsing an issue that was not ripe. In his written decision of January 30, 2009, the ALJ identified three issues which had been heard at the January 14, 2009 hearing: (1) whether the replacement ATP declined treatment; (2) employer's request for a change of ATP; and (3) claimant's request for attorney fees.

The ALJ determined that the MUR process was complete upon the selection of the replacement ATP. He concluded that no evidence was required on the issue as to whether the replacement ATP had refused to treat claimant because such refusal was unequivocally expressed in the June 2008 letter and the evidence was "unambiguous" that the replacement ATP declined to provide treatment due to nonmedical reasons. The ALJ did not decide whether claimant refused treatment. He concluded that the issue of selecting a different ATP was ripe for adjudication when employer filed its application for hearing and that the ALJ could select a new ATP. Despite this determination, the ALJ concluded that it would be "an extremely unwise action" for him to select a new ATP at that time. The ALJ therefore ruled that there was no procedural bar to employer's application for a hearing and employer had not endorsed an issue for hearing before it was ripe. Thus, the ALJ denied claimant's request for attorney fees. The Panel affirmed, and this appeal by claimant followed.

## II. Analysis

■ Claimant contends that he was entitled to an award of attorney fees under section 8–43–211(2)(d) because employer's application for hearing endorsed an issue that was "not ripe for adjudication at the time" it was filed. He argues that no new ATP could be selected by the ALJ until the appeal of the Director's order for a change of ATP was completed and that employer's request was consequently premature and improper. We are not persuaded.

■ A party that "requests a hearing or files a notice to set a hearing on issues which are not ripe for adjudication at the time such request or filing is made ... shall be assessed the reasonable attorney fees and costs of the opposing party in preparing for such hearing or setting." § 8–43–211(2)(d). Although the statute does not define "ripe for adjudication," a division of this court has held that an issue is ripe when it is "real, immediate, and fit for adjudication." *Olivas–Soto v. Indus. Claim Appeals Office*, 143 P.3d 1178, 1180 (Colo.App.2006). "[A]djudication should

be withheld for uncertain or contingent future matters that suppose a speculative injury which may never occur." *Id.*

Claimant contends that employer violated this provision by asking the ALJ to select a new ATP while the appeal of the Director's order was still pending. He points to employer's use of contingent language in the application—"so that when all appeals are exhausted"—to support his argument that the issue would not be ripe for adjudication until the pending appeal was completed. To hold otherwise, he contends, would risk the appointment of an ATP who could later be removed if claimant were to win the appeal and succeed in overturning the Director's change of ATP order. Because employer's request is based on a contingency, he argues, it violates the *Olivas–Soto* rule against hearings that seek to remedy a speculative injury. *Id.*

Claimant's contention disregards the MUR statute's concurrent avenues for resolving disputes over ATPs. As employer and the Panel note, the statute mandates that parties shall have seven days after receipt of the MUR order within which to agree upon a new level I provider. That agreement did not happen here because claimant declined to participate. The statute provides that in circumstances where the parties cannot agree, the Director shall select three potential providers. The party that is successful in the request for the MUR, in this case employer, shall then select a new ATP from among those three names. *See* § 8–43–501(4). The statute further provides that "[i]f no appeal is filed" from the order of the MUR, the successful party shall "notify the division of the name of the new provider" from among the three names submitted by the Director "within seven days." *Id.* Here, the Director could find only one name, and employer selected that ATP.

The statute does not explicitly state what occurs if an appeal of an MUR order is filed. The statute allows a party up to forty days to appeal the grant or denial of a request for a change of physician to an ALJ. § 8–43–501(5)(c), C.R.S. 2009. Here, claimant appealed the MUR order. Pursuant to the statute, employer nonetheless selected the

one doctor identified by the Director, but, as noted, claimant refused to cooperate, and that doctor declined to treat.

We perceive that at least one purpose of this statutory arrangement is to ensure that the claimant is promptly provided with an ATP after the MUR decision directing a change of provider. Under the applicable regulations, if the claimant chooses to remain under the care of the original ATP pending resolution of the MUR appeal, the employer shall continue to be responsible for the medical bills until the order on appeal is issued. But, if the employer prevails in the appeal, the claimant may be held liable for ·such medical costs. Dep't of Labor & Employment Rule 10–8(B), 7 Code Colo. Regs. 1101–3.

In other words, even though during the pendency of the appeal a claimant has the right to continue to be treated by the ATP ordered to be replaced, the claimant runs the risk of having to reimburse the employer for those medical costs if he or she does not prevail in the appeal. Consequently, the MUR statute is structured such that the selection of a new ATP can occur simultaneously with any MUR appeal that may be pursued. The claimant may see the newly selected ATP and avoid any risk of later being held liable for the medical costs or continue to see the original physician and bear the risk of repayment.

■ When interpreting a statute, we must give effect to the legislative intent and "construe all terms of a statute harmoniously, avoiding a strained or forced construction of any of its terms." *Davison v. Indus. Claim Appeals Office*, 84 P.3d 1023, 1036 (Colo. 2004). Hence, statutory terms should be given their plain, ordinary meaning. *Indus. Claim Appeals Office v. Orth*, 965 P.2d 1246, 1252 (Colo.1998). In addition, the statutory scheme must be read as a whole "to give a consistent, harmonious, and sensible effect to all its parts." *Dillard v. Indus. Claim Appeals Office*, 121 P.3d 301, 303 (Colo.App. 2005), *aff'd*, 134 P.3d 407 (Colo.2006).

Claimant's proposed interpretation of the MUR statute would not give full effect to all the statute's subparts. If we were to adopt

claimant's view of the statutory scheme, a party would not be able to select a new ATP until an appeal was completed. Such an interpretation runs counter to the statutory mandate that a party "shall have seven days" to select a new ATP after a change of ATP order has been entered. *See* § 8–43–501(4). Section 8–43–501(4) requires parties to act quickly to find a new ATP, regardless of whether an appeal has been commenced.

We acknowledge that the MUR statute anticipates that parties may simultaneously follow two separate courses in resolving disputes over ATPs, creating the possibility that a third ATP may have to be selected if a change-of-physician order is upheld but the claimant is unwilling or unable to see the chosen replacement ATP, as occurred here. However, this possibility does not, in our view, necessitate the suspension of the selection process. To postpone the selection process until all appeals are concluded would conflict with section 8–43–501(4)'s mandate to select a new ATP expeditiously and make options available to the claimant.

Claimant's reliance on *BCW Enterprises, Ltd. v. Industrial Claim Appeals Office*, 964 P.2d 533 (Colo.App.1997), does not persuade us otherwise. In *BCW*, a division of this court held that penalties were appropriate against a claimant who applied for a hearing seeking attorney fees against the employer for allegedly improperly delaying her medical care in "bad faith" while it appealed the Panel's decision denying her request for a change of physician. Unlike the situation currently before us, however, the claimant in *BCW* applied for a hearing on attorney fees before she prevailed in her appeal and any evaluation of bad faith conduct could be made. 964 P.2d at 538. A division of our court concluded that determining whether an appeal has been taken in bad faith must await the adjudication of that appeal before the issue becomes ripe. *Id.* Thus, the division found the *BCW* claimant's request to be premature.

We are not persuaded that the ATP selection process and the order to change the ATP present the same issue and disagree that the full resolution of the latter is required before the former may be undertaken.

Claimant's appeal addressed the order directing a change of ATP, not the identification of a replacement ATP. Although these issues are unquestionably related, they are not identical, as claimant implies. Consequently, the appeal of the order to change an ATP should not preclude the identification and selection of a new ATP. *See* §§ 8–43–301(12), 8–43–501(4), C.R.S. 2009.

The Panel determined that the MUR process was complete upon the selection of the new ATP, noting that the MUR statute set forth procedures only through the selection of a new ATP. Once an ATP has been selected, the statute and the workers' compensation rules of procedure are silent regarding the parties' subsequent steps. *See* § 8–43–501(4); Dep't of Labor & Employment Rule 10, 7 Code Colo. Regs. 1101–3. The MUR statute does not address the course parties are to follow after an ATP has been selected; the statute does not anticipate that eventuality. The Panel therefore concluded that because no further statutory action was required of the MUR committee or the Director, the ATP selection process was final and ripe for adjudication when the new ATP was selected.

We give deference to an agency's reasonable interpretations of the statutes it administers. Consequently, the Panel's statutory interpretation "will be set aside only if it is inconsistent with the clear language of the statute or with the legislative intent." *Magnetic Eng'g, Inc. v. Indus. Claim Appeals Office*, 5 P.3d 385, 389 (Colo.App.2000). We conclude that the Panel's interpretation that the MUR process was final and the issue of the selection of a replacement ATP was ripe for adjudication is a reasonable interpretation of its regulations and adopt it.

Claimant's contention that the ALJ improperly recharacterized employer's endorsed issue does not persuade us to reach a different conclusion. The ALJ framed the issue as "whether [the new ATP] refused to treat claimant, [employer's] request for a change of physician, and claimant's request for attorney fees." This, in our view, is entirely consistent with employer's description of the issue in its application for hearing, which indicated "authorized provider" was at

issue and explained that a new ATP would probably need to be selected in light of the replacement ATP's rescission of her agreement to treat claimant.

We also note that the Panel concluded that as a result of his interrogatory answers, claimant had not clearly stated that he wished to remain under the care of his original physician and would accept no other treatment despite the Director's order to change ATPs. Further, claimant's answers indicated a contention that, based on *Ruybal v. University of Colorado Health Sciences Center*, 768 P.2d 1259 (Colo.App.1988), and two other cases, the insurer was failing to provide medical care such that the choice of an ATP had passed to him. As a result, the Panel concluded that although the ALJ eventually found that claimant intended to continue to obtain treatment from his original physician, it could not conclude that this issue was not ripe for determination at the time the request for hearing was filed.

As a result of our conclusion that the MUR process was final upon the Director's identification of a replacement ATP, we also reject claimant's contention that employer violated section 8–43–501(2)(e), C.R.S. 2009. Section 8–43–501(2)(e) prohibits a party from requesting "a hearing pursuant to section 8–43–207 until the utilization review proceedings have become final." Here, employer did not violate that provision.

We therefore conclude that the issue of the selection of a new ATP was ripe for adjudication when employer filed its application for hearing and that employer did not violate section 8–43–211(2)(d). Consequently, the ALJ committed no error in denying claimant's request for attorney fees.

To the extent claimant suggests that his due process rights were violated by employer's endorsement of issues or the ALJ's alleged recharacterization of the same, we perceive no due process violation and reject any such suggestion.

### III. Appellate Attorney Fees and Costs

Lastly, claimant asserts he is entitled to his attorney fees on appeal. Because employer has prevailed on appeal, we deny claimant's request. We note, however, that employer is entitled to its costs pursuant to C.A.R. 39(a).

The order is affirmed.

Judge ROY and Judge DAILEY concur.